ROBERT GREEN, Appellant, *v.* RICHARD LEWIS, Appellee.

APPEAL FROM McHENRY.

If the evidence warranted the jury in finding a verdict, the Supreme Court will not disturb it.

A judge of the Circuit Court is at liberty to instruct a jury at his discretion, if he reduces his instructions to writing, so that the jury may take them with them, in considering of their verdict.

The proper question in reference to expressions used in instructions is, What was the idea designed to be conveyed, and how was the language understood by the jury?

THIS was an action of assumpsit for work and labor, brought by Lewis against Green in the McHenry Circuit Court. Green, by plea in abatement, sets up that the services rendered were upon the joint liability of Robert Green, the defendant below, and Joseph Green, and not of Robert alone. To this there is a replication traversing the issue upon the plea, and joinder.

At the September term, 1851, of the McHenry Circuit Court, WILSON, Judge, presiding, the cause was submitted to a jury, and resulted in a verdict and judgment against Robert Green, the appellant, in the sum of $270. The evidence is stated in the opinion of the court.

Loop & Hulburt, for appellant.

C. McClure, for appellee.

Caton, J. Any supposed errors which may have intervened upon the former trial of this cause, cannot now properly be made the subject of complaint. If the final verdict and judgment were regularly obtained and without error, they must be allowed to stand.

But two of the errors assigned are open to our inspection. The first is, whether the court should have set aside the verdict because it was unsupported by the evidence; and the second, whether the court erred in the charge given to the jury, which was unsolicited by either party.

The evidence shows, that Robert Green, the defendant below, and his brother Joseph, occupied and cultivated a farm together, and that the services sued for were labor on this farm. Each of the brothers had a horse-team, and Joseph had an ox-team, all of which were worked on the place. One had as much control over the business of the farm as the other. The grain was harvested and stacked together, and, when threshed, was put into a common bin. Their hogs were kept together; and one witness bought a hog of both, and accounted to both for it. The plaintiff below told the same witness that " he was at work for them, and did not know which he would get his pay of." These are the leading and principal facts upon which the defence—which is, that the suit should have been brought against both the Greens, and not against Robert alone—is sought to be established. On the other hand, it is insisted, that whatever joint interest there might have been in the farm and its products, the arrangement was that each of the Greens should furnish his proportion of the labor on the farm, and his proportion of the expense individually; and that, in pursuance of that arrangement, Robert Green employed the plaintiff below to work upon the farm, and that, in pursuance of that employment, the services were performed for which the action was brought. To establish these facts, it was proved by one witness that he was at work on the farm at the time Lewis commenced work, in July, 1846, and

that the witness was employed and paid by Joseph Green, and that Lewis lived with Robert Green, the defendant below; that witness heard Robert talk about his hired man Lewis; said he was a good fellow. Another witness worked on the farm "off and on" during the time Lewis was at work there. He was sometimes employed by one and sometimes by the other, and charged them severally. A witness swore, that upon the trial of a cause between Joseph Green and one Farrell, which was for work on the farm, Robert Green was sworn as a witness and testified that there was no partnership between him and his brother Joseph, and that he had no interest in the event of that suit. That suit was tried in April, 1850, and the account on which it was brought extended back for eighteen months from that time. Another witness said, that upon that trial Robert testified that they farmed together, and were in partnership so far as threshing went, but that each one furnished his own part of the help and kept an account of it. This witness stated that Farrell's account extended to a much earlier period than that stated by the other witness. A blacksmith testified that he did work on horses, ploughs, &c., used on the farm, and that Robert Green told him to keep the accounts separate. He stated that Lewis took a plough and horses to his shop to have work done on them for Robert Green. The evidence showed that Lewis worked there from the forepart of July, 1846, till October or November, 1848, and that his services were worth from ten to twelve dollars per month. It also appears the division of the farm did not take place till April, 1850.

This evidence certainly warranted the jury in coming to the conclusion, that Lewis was employed and was to be paid by Robert Green alone. There is no doubt that the services were performed for the joint benefit and about the joint business of both the brothers; but unless the defendant below swore to a falsehood, the arrangement between the brothers was that each should furnish his proportion of the labor and charge it to the concern, and this statement is not inconsistent with any of the testimony in the case, but is corroborated by the fact that Joseph Green had a man at work on the farm, and with Lewis, whom he employed and paid himself, as well as by the manner in

which the blacksmith was directed by Robert Green to keep his accounts for work done for them. And even if his statements were not thus corroborated, it seems to me that it is an ungracious complaint, that the jury believed that he swore to the truth on that former occasion; and if that was the truth, the inference is most natural and satisfactory that Robert Green employed Lewis on his own responsibility to work upon the farm, in pursuance of the understanding between him and his brother. The existence of such an agreement, together with the facts that Lewis lived with Robert Green, and that Joseph Green had another man employed upon his own account to work upon the farm, sufficiently rebut the inference of a joint employment, which would legitimately arise from the fact that the services rendered were about the business of both. At any rate, if the jury were not absolutely bound to find the way they did, the finding is not so unsupported by the evidence as to justify this court in disturbing it.

I have examined the evidence, because a proper understanding of the facts proved before the jury will enable us more properly to understand and appreciate the instruction which the court gave to the jury.

The first objection taken to the charge is, that it was given without the solicitation of either party. This objection cannot be for a moment admitted. The judge is placed upon the bench to advise the jury of the law of the case, and to administer justice to suitors fairly and impartially. To suppose that the legislature ever intended to tie up the hands of the judge, and to compel him to sit indifferently by and see the jury misled by design or inadvertence, is too inconsistent with wise and just legislation, ever to be imputed to the law-making power, without the most express language to support it. But there is no such intimation in the act relied upon. It leaves the judge at perfect liberty to instruct them whenever he thinks it necessary to enable them properly to understand the law of the case; and it only requires that those instructions shall be given in writing that the jury may take them with them into their retirement. That was done in this case.

That portion of the charge complained of is as follows: " If

you believe that the labor was done for the joint benefit of both the Greens, still if you believe from the evidence that the labor was performed by the procurement of the defendant, Robert Green, individually, the action is well brought and the plaintiff is entitled to recover, provided he has proved that he performed the labor, and that the same is of value." The objection to this instruction is enforced by a criticism upon the word "procurement." That the word was not here used in its strictly proper sense may be admitted. That the word "employment" would have been more literally accurate may not be denied. But if instructions which are drawn up in the hurry of a trial are to be thus criticized, few might stand the test. Such analytical criticism is not the fair or just mode either of examining an instruction or understanding testimony. The proper question is, what was the idea designed to be conveyed, and how was it understood by the jury. Verbal inaccuracies are constantly met with, both in instructions and in testimony, where the idea designed to be conveyed is easily understood. Sometimes one word is used for another, as "plaintiff" for "defendant," or an entire word is omitted, which, when supplied, may even reverse the literal meaning of the sentence; and yet if the court can clearly see, when the whole is taken together, what the idea was which was intended to be conveyed, and that it must have been understood as intended, it would be manifestly improper for this court to refuse to understand it as it was intended, and was understood by the jury. No person who reads this instruction, understanding the facts to which it was to apply, can fail to understand its meaning. Juries are not in the habit of taking dictionaries with them into their rooms to study out the meaning of words in common use, for the purpose of detecting some inaccuracy of expression; and it is our place to seek to ascertain what influence the court did in fact exercise over them in forming their verdict, and, when that is ascertained, we are to determine whether it was proper or not. If the jury were in fact made to understand what the law was as applicable to the facts, then they were not misled by the instruction, and there was no error. That such was the case here, we entertain no doubt. They could have only understood from this instruction that if

Robert Green employed Lewis individually, although to work for the benefit of himself and Joseph, he was individually liable to pay for the work. The whole case shows that that had been the contest all the way through, and that no question had been made that the work performed was for the benefit of both. It was in the light of these facts that the instruction was read to, and understood by, the jury, and there can be no doubt that their understanding was as clear as if the instruction had been drawn in the most precise terms. In this instruction we find no error. The instructions which were asked for by the defendant below and refused, were not excepted to, and consequently are not before us.

The judgment must be affirmed.

*Judgment affirmed.*